[No. 18731–7–I. Division One. September 6, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. NORMAN
GOTCHER, JR., *Appellant.*

*Dennis Benjamin* of *Washington Appellate Defender
Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Raymond
McFarland, Deputy,* for respondent.

WINSOR, J.—Norman Gotcher, Jr., appeals from the
judgment and sentence entered following his conviction of
burglary in the first degree (count 1), with a deadly weapon
special verdict, and his plea of guilty to burglary in the
second degree (count 2). Gotcher assigns error only to his
conviction on count 1.

On the evening of December 31, 1985, Gotcher and a
companion broke into a residence in Seattle. The suspects
were apprehended by police inside the residence. Certain
valuables from the residence were found in Gotcher's pos-
session. When Gotcher was arrested he also had in his pos-
session a partially opened switchblade knife with a blade

4½ inches long. Gotcher was charged by amended information with the crime of burglary in the first degree while armed with a deadly weapon (count 1).

At trial, the jury instructions included the following:

### No. 5

To convict the defendant of the crime of burglary in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

. . .

(3) That in so entering or while in the dwelling or in immediate flight from the dwelling the defendant was armed with a deadly weapon;

. . .

### No. 6

Deadly weapon, for purposes of the burglary charge, means any weapon, device, instrument, substance or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury.

. . .

### No. 16

For the purposes of the [deadly weapons sentence enhancement] special verdict, a knife having a blade longer than three inches is a deadly weapon.

The State must prove beyond a reasonable doubt that the defendant was armed with a deadly weapon.

Defense counsel conceded during closing argument that Gotcher had burglarized the premises, but argued that Gotcher had not been armed with a deadly weapon, and therefore should only be convicted of burglary in the second degree. The State argued in rebuttal:

We also have recovered from the scene the prybar that was used to get into the house. It just goes to emphasize even further what I submit was obvious to begin with: That is, that this switchblade is nothing other than a deadly weapon. It's like a firearm. If somebody has a gun tucked in their belt, what does somebody have a gun on them for? It's not going to be used to start a fire or anything like that. It's a weapon, and it's a deadly weapon. And you know that automatically.

The same thing counts for the switchblade in this case.

Counsel has spent quite a bit of time in looking at the evidence to submit that there is no adequate proof in this case that the defendant actually reached for this in his coat. That's not an issue here, I don't think, because, really what you have, from the evidence, is the mere fact of possession alone, which is what makes burglary in the first degree different from burglary in the second degree.

Defense counsel objected, but the court overruled the objection, stating, "The jury has been instructed. They can read the instructions again if they have any doubt about it."

During its deliberations, the jury submitted the following written questions to the trial court:

A. Under Instruction #6, is it *necessary* that an item be "used, attempted to be used, or threatened to be used," in order to classify it as a deadly weapon? Is intent a factor?

B. Assuming the item is classified as a deadly weapon, is "armed with" (in #5, point 3) synonymous with "in possession of"?

The court[1] responded:

I cannot provide you with an answer. You must apply to these instructions your knowledge of English grammar and the common meaning of words.

The jury subsequently returned a verdict finding Gotcher guilty as charged.

Gotcher contends that the trial court erred by failing to cure the State's alleged misstatement of the law in its closing argument, thereby confusing the jury and allowing it to convict on insufficient evidence. Gotcher maintains that by arguing that mere possession of a switchblade knife was sufficient for the jury to find the knife was a deadly weapon within the law defining first degree burglary, the State misstated the law and prejudiced Gotcher. By failing to sustain the defense objection, correct the prosecutor, and clarify

---

[1]The judge who responded to the jury's questions was not the judge who presided at the trial. Although there was apparently colloquy regarding the jury's questions, it was not transcribed.

the law for the jury, Gotcher argues, the court committed reversible error.

The State responds that Gotcher bears the burden on appeal of establishing both the impropriety of the State's remarks and any prejudicial effect; that the State accurately characterized the law in its closing argument; and that therefore Gotcher has failed to meet his burden on appeal.

We agree that the State misstated the law. The statute defining first degree burglary, RCW 9A.52.020(1), provides:

A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

The term "armed" in the statute means that the weapon is readily accessible and available for use. *State v. Randle*, 47 Wn. App. 232, 235, 734 P.2d 51 (1987), *review denied*, 110 Wn.2d 1008 (1988).

The term "deadly weapon" is defined in former RCW 9A.04.110(6) as follows:

"Deadly weapon" means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury[.]

Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.04.110(6), p. 824.

In *State v. Hall*, 46 Wn. App. 689, 732 P.2d 524, *review denied*, 108 Wn.2d 1004 (1987), the court considered whether possession of a firearm constitutes being armed with a deadly weapon within the meaning of the statute defining first degree burglary. The court discussed the definition of "deadly weapon" contained in the burglary statute:

> The State argues two classifications of deadly weapons are defined in RCW 9A.04.110(6). The first class of deadly weapons is specifically defined to include "any explosive or loaded or unloaded firearm". A second class of deadly weapons is defined generally to "include any other weapon . . . [or] instrument . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious bodily injury". The State argues the first classification defines per se dangerous weapons and no analysis of willingness or present ability to use a firearm as a deadly weapon is needed. We agree. For purposes of first degree burglary, the defendant is armed with a deadly weapon if a firearm is "easily accessible and readily available for use by the defendant for either offensive or defensive purposes." *State v. Sabala,* [44 Wn. App. 444, 448, 723 P.2d 5 (1986)].

46 Wn. App. at 694–95. Implicit in the court's characterization of explosives and firearms as deadly weapons per se is the proposition that a weapon included in the second category is not per se a "deadly weapon"; it must be shown that under the circumstances in which it is *used,* or *attempted* or *threatened* to be used, the weapon is readily capable of causing death or serious bodily injury.

■ We now hold that the implication of the court in *Hall* concerning the second classification of deadly weapons, dictum in that opinion, is the law. There must be some manifestation of an intent to use a weapon in the second classification. We reject the State's position, that possession of a switchblade knife alone is a sufficient circumstance of use to render the knife a deadly weapon, because it makes a nullity of the "used, attempted to be used, or threatened to be used" language of RCW 9A.04.110(6). A switchblade knife falls within the second *Hall* classification and is therefore not per se a deadly weapon. Hence, there must be some manifestation of willingness to use the knife before it can be found to be a deadly weapon under RCW 9A.04-.110(6).

In its closing, the State argued that mere possession of the switchblade would permit the jury to find the Gotcher

was armed with a deadly weapon within the meaning of the first degree burglary statute. That argument was improper and mischaracterized the law. However, improper argument does not require reversal unless the error was prejudicial to the defendant. *State v. Davenport,* 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). Rather,

> only those errors [that] may have affected the outcome of the trial are prejudicial. Errors that deny a defendant a fair trial are per se prejudicial. To determine whether the trial was fair, the court should look to the trial irregularity and determine whether it may have influenced the jury. In doing so, the court should consider whether the irregularity could be cured by instructing the jury to disregard the remark. Therefore, in examining the entire record, the question to be resolved is whether there is a substantial likelihood that the prosecutor's misconduct affected the jury verdict, thereby denying the defendant a fair trial.

(Citations omitted.) *Davenport,* 100 Wn.2d at 762–63.

■ In the present case, there was substantial likelihood that the prosecutor's misstatement[2] affected the jury verdict and, therefore, Gotcher was denied a fair trial. After the State argued that "the mere fact of possession [of the switchblade] alone . . . is what makes burglary in the first degree different from burglary in the second degree," defense counsel objected but was overruled. The court's comment on the misstatement was simply: "The jury has been instructed. They can read the instructions again if they have any doubt about it." During deliberation, the influence of the State's improper argument on the jury was demonstrated by the jury's two inquiries to the court reflecting the prosecutor's misstatement of the law.

The court had an opportunity to prevent the confusion when defense counsel objected to the State's closing argument. The court failed to cure the misstatement by overruling the objection and by not clarifying the law to the

---

[2]We do not find that the prosecutor's misstatement of the law in this case was intended to mislead the jury.

jury. In addition, the court's referring the jury to the instructions during deliberations did not correct the error because the instructions, although they are standard WPIC instructions,[3] were confusing as to whether possession of a switchblade knife is sufficient to find the defendant "armed with a deadly weapon."[4] It is apparent that lacking a proper curative instruction, the jury was influenced by the State's argument.

In light of the jury's confusion over whether possession of the knife was sufficient to satisfy the deadly weapon element, we cannot know whether the jury applied the proper law in finding Gotcher guilty of first degree burglary. Hence, we cannot be confident that Gotcher received a fair trial. We conclude that the error was prejudicial.

Gotcher also contends that there was insufficient evidence to find the deadly weapon element of first degree burglary. We will briefly address this issue as it may reappear on retrial.

It is undisputed that Gotcher had a switchblade knife in his right coat pocket while he was committing the burglary. A police officer testified that: (1) he found the two suspects hiding behind an automobile in the garage; (2) he ordered the suspects to place their hands on a wall; (3) Gotcher removed his right hand from the wall and moved it toward his right coat pocket; (4) Gotcher "fumbled" with something on his right side; (5) Gotcher disregarded several verbal commands to place his hands back on the wall; and (6)

---

[3]See WPIC 2.06 and 60.02.

[4]Under the evidence presented in this case the only possible way for the jury to find the deadly weapon element satisfied was from an attempted use of the knife. That being so, the third element of the "to convict" instruction, instruction 5, *supra*, could have been revised to read: "That in so entering or while in the dwelling or in immediate flight from the dwelling the defendant *attempted to use* a deadly weapon." The italicized phrase replaces "was armed with" in the WPIC and would have eliminated any possible confusion for the jury (or counsel). This modification would not be appropriate where the alleged deadly weapon was a firearm or explosive.

a police dog was released to subdue Gotcher. A second offi-cer testified that the safety was off the switchblade when he removed it from Gotcher's pocket and that the switchblade was partially opened. Viewing this evidence in the light most favorable to the State, there was sufficient evidence from which the jury could have found all the essential ele-ments of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Randle, supra.*

We reverse and remand for a new trial.

SCHOLFIELD, C.J., and COLEMAN, J., concur.