2015 APR 20 AM 9: 22



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71004-4-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CHRISTOPHER R. DABALOS, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: April 20, 2015 |
|  | ) |  |

Cox, J. – Christopher Dabalos appeals his judgment and sentence for his conviction of unlawful possession of a firearm in the first degree. The State presented sufficient evidence to prove that Dabalos constructively possessed the firearm. Dabalos fails in his burden to show that his trial counsel provided ineffective assistance. And the prosecutor's arguments do not warrant reversal. We affirm.

The material facts are largely undisputed. In March 2011, Auburn police executed a search warrant at a house in Renton. The house was a two-story residence with at least three bedrooms. Four people, including Dabalos, were in the living room of the house at the time the warrant was served.

During their search of the master bedroom, officers found several items belonging to Dabalos. These items included his wallet and some identification cards.

In a closed wooden trunk in the master bedroom, officers found an AK-47 rifle and magazines. Also inside the trunk, officers found a temporary driver's license belonging to Dabalos and a bill addressed to Dabalos at a different address.

The State charged Dabalos with unlawful possession of a firearm in the first degree.

The case proceeded to a jury trial. Dabalos stipulated that he had previously been convicted of a serious offense, satisfying an element of this charged offense. He did not testify or present any evidence. The jury convicted Dabalos as charged.

Thereafter, Dabalos obtained new counsel and moved for a new trial on the ground of ineffective assistance of counsel. He asserted that substantial justice was not done in his case because "he was convicted when two eyewitnesses with exculpatory evidence were not interviewed and did not testify for the defense at trial." In support of this claim, he obtained declarations from two people, Michael Monroe and Paula Hopper, who lived at the house when authorities executed the search warrant.

Dabalos also moved for an arrest of judgment, arguing that there was insufficient evidence to prove two material elements of the crime charged—that Dabalos had possession of the gun, or, that he had knowledge he possessed someone else's gun.

The court orally denied both motions. It sentenced Dabalos to an 87-month standard-range sentence.

2

Dabalos appeals.

## SUFFICIENCY OF THE EVIDENCE

Dabalos first argues that the State did not prove beyond a reasonable doubt that he committed the crime of unlawful possession of a firearm in the first degree. Specifically, he contends that the State did not prove that he knowingly owned, possessed, or controlled the rifle found in the Renton house. We disagree.

Due process requires the State to prove beyond a reasonable doubt all the necessary facts of the crime charged.[1] "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."[2] "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[3] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[4]

Under RCW 9.41.040(1), a person is guilty of the crime of unlawful possession of a firearm in the first degree if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been

---

[1] State v. Colquitt, 133 Wn. App. 789, 796, 137 P.3d 892 (2006).

[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[3] Id.

[4] Id.

convicted of any serious offense. The State must prove that the defendant knowingly owned, possessed, or controlled the firearm.[5]

Dabalos stipulated at trial that he had previously been convicted of a serious offense. Thus, the issue is whether there was sufficient evidence to establish that he knowingly owned, possessed, or controlled the firearm.

Possession may be either actual or constructive.[6] A person actually possesses something that is in his or her physical custody.[7] A person constructively possesses something that is not in his or her physical custody but is still within his or her "'dominion and control.'"[8]

"Evidence of temporary residence, personal possessions on premises, or knowledge of presence of [contraband], without more, [are] insufficient to show dominion and control."[9] Dominion and control need not be exclusive to establish constructive possession, but a showing of more than mere proximity to the contraband is required.[10]

Constructive possession is established by examining the totality of the circumstances and determining if there is substantial evidence from which a jury

---

[5] State v. Anderson, 141 Wn.2d 357, 359, 5 P.3d 1247 (2000).

[6] State v. Raleigh, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010).

[7] State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

[8] Id. (quoting State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969)).

[9] State v. Collins, 76 Wn. App. 496, 501, 886 P.2d 243 (1995) (emphasis omitted).

[10] State v. Hagen, 55 Wn. App. 494, 498-99, 781 P.2d 892 (1989).

can reasonably infer the defendant had dominion and control over the item.[11] "In determining dominion and control, no one factor is dispositive."[12]

The ability to reduce an object to actual possession is one factor for determining dominion and control.[13] Another factor is whether a person had dominion and control of the premises where the contraband was found.[14]

In State v. Cantabrana, this court stated that when the sufficiency of the evidence is challenged on the basis that the State has only shown dominion and control over the premises, and not over the contraband, "courts correctly say that the evidence is sufficient because dominion and control over [the] premises raises a rebuttable inference of dominion and control over the [contraband]."[15]

Here, Dabalos was in the house when the officers executed the warrant early one morning. During the search, officers found several of Dabalos's personal possessions in the master bedroom of the house. On the floor of the master bedroom, officers found Dabalos's wallet. It contained his Washington State driver's license, various other documents, credit cards, and some cash. Under the bed in the master bedroom, officers found an expired Washington State driver's license belonging to Dabalos. On top of the wooden chest where the firearm was found, officers found a Department of Corrections identification

---

[11] Collins, 76 Wn. App. at 501.

[12] Id.

[13] State v. Chouinard, 169 Wn. App. 895, 899, 282 P.3d 117 (2012).

[14] State v. Tadeo-Mares, 86 Wn. App. 813, 816, 939 P.2d 220 (1997).

[15] 83 Wn. App. 204, 208, 921 P.2d 572 (1996).

card belonging to Dabalos. And inside the trunk, underneath the rifle, officers found other items belonging to Dabalos. Specifically, they found a temporary driver's license from 2009 and a bill addressed to Dabalos at a different address.

This evidence shows that Dabalos had dominion and control over the master bedroom where police found the firearm. This proof of dominion and control over the master bedroom raises a rebuttable inference of dominion and control over the firearm found in this case.[16] Noticeably absent from this record is any evidence that would support an argument that the presumption of dominion and control of the firearm that arises from dominion and control over the master bedroom has been rebutted. This is telling.

Dabalos properly admits that "the State proved that [he] was in the home when the search warrant was executed and that his wallet, driver's license, temporary driver's license, DOC identification, and a bill were in the bedroom where the gun was found."[17] He argues, "At most, the State proved that [he] may have lived in the bedroom along with [another person]."[18] However, these observations show much more. They establish a rebuttable presumption of constructive possession of the firearm.

The State also argues that Dabalos could have easily actually possessed the firearm "by simply opening the unlocked trunk."[19] This observation is correct

_____

[16] Id.

[17] Brief of Appellant at 7.

[18] Id.

[19] Brief of Respondent at 8.

and further supports the conclusion that the evidence supports constructive possession of the firearm by Dabalos.

Dabalos argues that constructive possession "requires proof that the defendant had control over the firearm itself, not just the place where it was located."[20] But in this case, the State proved that Dabalos had dominion and control over the master bedroom and that Dabalos could have easily reduced the firearm to actual possession by opening the unlocked trunk. This is sufficient to prove control over the firearm itself. Thus, this argument is not persuasive.

Dabalos distinguishes this case from State v. Echeverria.[21] In that case, Division Three affirmed Jose Echeverria's conviction for unlawful possession of a firearm when he was found driving a car with a firearm sticking out from underneath the driver's seat.[22] Dabalos asserts that, in contrast to Echeverria, the gun in this case was not visible. But this distinction is immaterial. The State presented sufficient evidence in this case to show constructive possession of the firearm for the reasons we have already discussed. Dabalos's reliance on Echeverria is misplaced.

In sum, the evidence was sufficient.

---

[20] Brief of Appellant at 7.

[21] Id. at 8 (citing State v. Echeverria, 85 Wn. App. 777, 779-80, 934 P.2d 1214 (1997)).

[22] Echeverria, 85 Wn. App. at 783.

7

## INEFFECTIVE ASSISTANCE OF COUNSEL

Dabalos next argues that the trial court erred by denying his motion for a new trial based on ineffective assistance of counsel. He claims that his attorney was ineffective for failing to call two potential witnesses "who would have provided exculpatory testimony" and for failing to investigate these two witnesses. We disagree.

This court reviews a trial court's denial of a motion for a new trial for abuse of discretion.[23]

The right to counsel includes the right to effective assistance of counsel.[24] In order to prevail on an ineffectiveness claim, the defendant must prove that (1) counsel's performance was deficient and (2) the defendant was prejudiced by the deficient performance.[25] Counsel's performance was deficient if it fell below "an objective standard of reasonableness."[26] The defendant was prejudiced if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[27] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[28]

---

[23] State v. Holm, 91 Wn. App. 429, 435, 957 P.2d 1278 (1998).

[24] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[25] Id. at 687; State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[26] Strickland, 466 U.S. at 688.

[27] Id. at 694.

[28] Id.

"Deficient performance is not shown by matters that go to trial strategy or tactics."[29] Reviewing courts make "every effort to eliminate the distorting effects of hindsight and must strongly presume that counsel's conduct constituted sound trial strategy."[30] "'An attorney's action or inaction must be examined according to what was known and reasonable at the time the attorney made his choices.'"[31] In reviewing such claims, this court engages in a strong presumption that trial counsel was effective.[32]

"Deciding whether to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel."[33] A defendant can overcome this presumption by showing that counsel failed to adequately investigate or prepare for trial.[34]

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[35] "The reasonableness of counsel's actions may be determined or substantially

---

[29] State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

[30] In re Pers. Restraint of Rice, 118 Wn.2d 876, 888-89, 828 P.2d 1086 (1992).

[31] In re Pers. Restraint of Davis, 152 Wn.2d 647, 722, 101 P.3d 1 (2004) (quoting Hendricks v. Calderon, 70 F.3d 1032, 1036 (9th Cir. 1995)).

[32] McFarland, 127 Wn.2d at 335.

[33] State v. Davis, 174 Wn. App. 623, 639, 300 P.3d 465, review denied, 178 Wn.2d 1012 (2013).

[34] Id.

[35] Strickland, 466 U.S. at 691.

influenced by the defendant's own statements or actions."[36] "[W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether."[37] Further, "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."[38]

Here, Dabalos fails in his burden to show his that trial counsel provided ineffective assistance to him.

Dabalos asked his trial counsel to contact Michael Monroe who was present in the home when Dabalos was arrested. He also told her "that Paula Hopper was present but that she may have criminal history *so he did not want [trial counsel] to contact her.*"[39] Dabalos told his trial counsel that both Monroe and Hopper would say that someone named Dennis Bertram was in the house with a gun and that they heard Dabalos say "get the gun out of here."[40]

Monroe and Hopper's declarations, obtained after trial, generally confirm this anticipated testimony. In her declaration, Hopper testified that a few days prior to the search, Bertram came over to the house and said he had a gun to

---

[36] Id.

[37] Id.

[38] Id.

[39] CP at 68 (emphasis added).

[40] Id. (internal quotation marks omitted).

keep at the house for a short time. She further stated that she never saw Dabalos with the gun and that she was "pretty certain" that Dabalos did not know the gun was in the house or his bedroom.

Monroe, in his declaration, testified that a week before the search, Bertram brought something into Dabalos's room and a few minutes later, Dabalos "came down and said something like he didn't mess with guns and to get that out of here" and then Dabalos left. Monroe stated that Bertram told him that he needed to keep a gun at the house for a short time and that "[Bertram] sort of decided it was okay to keep it in a chest in [Dabalos's] room."[41] Monroe further stated, "I went back up there to [Dabalos's] room and [Bertram] put the gun in a chest."[42] He asserted, "[Dabalos] had no part in [Bertram] putting the gun in the chest and [Dabalos] was already gone when that happened."[43]

Dabalos's trial counsel stated that the defense in this case was a general denial of the offense. Specifically, the defense strategy was to show that Dabalos "had no knowledge of the gun being present in his room and that he did not have dominion and control over the gun."[44] With respect to trial counsel's decision not to call Hopper as a witness, she stated in her declaration:

> Strategically at this point, I thought it also best not to call Paula Hopper as a witness due to the fact that her testimony would place the gun and Mr. Dabalos in the bedroom of the house, which I

---

[41] Id. at 119.

[42] Id.

[43] Id. at 68.

[44] Id.

thought would not be helpful to proving that Mr. Dabalos had no knowledge of the gun.[45]

Given Dabalos's direction to trial counsel not to contact Hopper because of the possibility she had a criminal record, it is at least inconsistent for him to now criticize defense counsel for not doing so. More importantly, trial counsel's decision not to contact Hopper was objectively reasonable given the testimony that would have come from her would have strengthened the State's case and been inconsistent with the general denial defense. Because he fails to establish the first prong of the test, we need not address the second prong, prejudice.

As for the testimony of Monroe, we reach the same conclusion. It, too, would have been inconsistent with the general denial defense and would also have strengthened the State's case. The choice to not pursue investigation and not call to trial this witness is well within the bounds of objectively reasonable decisions by defense counsel at trial.

In sum, after looking to all the circumstances and applying "a heavy measure of deference to counsel's judgments," Dabalos fails to show that trial counsel's performance was deficient. The trial court properly concluded that Dabalos's trial counsel made reasonable, strategic decisions not to investigate, or call as witnesses, Monroe and Hopper. The trial court properly denied Dabalos's motion for a new trial.

Dabalos argues that the trial court used the wrong legal standard when it ruled that trial counsel's performance was reasonable based upon the

---

[45] Id. at 70.

12

information that Dabalos provided to her. He cites Strickland for the proposition

that "[a] strategic choice cannot reasonably be made in the absence of a

thorough investigation" and he argues that counsel's duty to investigate extends

beyond investigating the information her client has provided her.[46] But Strickland

also expressly recognized that "[c]ounsel's actions are usually based, quite

properly, on informed strategic choices made by the defendant and on

information supplied by the defendant."[47] Dabalos gave trial counsel reasons to

believe that pursuing this investigation would be fruitless. Accordingly, this

argument is not persuasive.

Dabalos cites Lord v. Wood, a Ninth Circuit case, to argue that trial

counsel could not make a reasonable decision to call Monroe and Hopper as

witnesses without speaking to them personally.[48] But even the Lord court

acknowledged that counsel "is not obligated to interview every witness personally

in order to be adjudged to have performed effectively."[49] Instead, where an

attorney does not put a witness on the stand, his or her decision is entitled to less

deference than if he or she interviews the witness.[50] Accordingly, while Lord

---

[46] Brief of Appellant at 16 (quoting Strickland, 466 U.S. at 691) (citing Rompilla v. Beard, 545 U.S. 374, 387-89, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005)).

[47] Strickland, 466 U.S. at 691.

[48] Brief of Appellant at 17 (citing Lord v. Wood, 184 F.3d 1083, 1095 (9th Cir. 1999)).

[49] Lord, 184 F.3d at 1095 n.8.

[50] Id.

indicates that Dabalos's trial counsel's decision is entitled to less deference based on her failure to interview Monroe and Hopper, Lord does not stand for the proposition that this failure is per se deficient.

Dabalos compares this case to State v. A.N.J..[51] But that case is distinguishable. In A.N.J., the defense attorney did little to no investigation or research into the case, did not follow up with witnesses who could have provided an alternative explanation for the victim's report, never spoke to the investigating officer, made no requests for discovery, filed no motions, spent as little as 55 minutes with A.N.J. prior to the plea hearing, did not carefully review the plea agreement, and did not consult with experts.[52] In contrast, Dabalos's trial counsel was well-informed of the factual and legal issues, interviewed the lead detective, successfully excluded other evidence found at the house, and pursued a sound trial strategy. In short, Dabalos's reliance on A.N.J. is not persuasive.

## PROSECUTORIAL MISCONDUCT

Dabalos argues that prosecutorial misconduct in closing argument and in rebuttal denied him his constitutional right to a fair trial. We disagree.

To prevail on a claim of prosecutorial misconduct, the defense bears the burden of establishing that the prosecutor's conduct was both improper and prejudicial.[53]

---

[51] Brief of Appellant at 17-18 (citing State v. A.N.J., 168 Wn.2d 91, 225 P.3d 956 (2010)).

[52] A.N.J., 168 Wn.2d at 100-02.

[53] State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

A prosecutor's closing argument may only address the law as stated in the trial court's instructions.[54] It is misconduct for a prosecutor to argue to the jury in a manner that removes or reduces its burden of proof of every element of the crime.[55]

When defense counsel fails to object to alleged improper conduct, it constitutes a waiver of any prosecutorial misconduct unless the remark was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[56] Under this "heightened standard," the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[57] "[T]he absence of an objection by defense counsel 'strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial.'"[58]

"Instead of examining improper conduct in isolation, [a reviewing court] determine[s] the effect of the prosecutor's improper conduct by examining that conduct in the full trial context, including the evidence presented, 'the context of

---

[54] State v. Davenport, 100 Wn.2d 757, 760, 675 P.2d 1213 (1984).

[55] State v. Warren, 165 Wn.2d 17, 27, 195 P.3d 940 (2008).

[56] Emery, 174 Wn.2d at 760-61.

[57] Id. at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

[58] State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (emphasis omitted) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

the total argument, the issues in the case, the evidence addressed in the

argument, and the instructions given to the jury.'"[59]

Here, Dabalos contends that the prosecutor committed misconduct "by

misstating the elements of the crime, thus reducing the State's burden of proof."[60]

He first contends that the following statement from closing argument was

improper:

> You may have heard the word ownership.  The Defendant owned a
> firearm.
>
> If you read the instructions carefully, you will see that
> actually we don't have to prove that.  We don't have to prove the
> gun belonged to him.  And if you step back and think about it, that
> makes sense.  Because if you're going to say in the law that if you
> have been convicted of a serious offense in your past, you're not
> allowed to have a firearm, what kind of law would that be if you
> could say, well, yeah, I had it, but I didn't own it.
>
> **The law says we don't want the gun in your hands,
> period.  We don't want the gun within your reach, period.  And
> so the way the law is written, the way the instructions read, it's
> reflective of that.**[61]

He next contends that the following statement from rebuttal was improper.

> It is [the] fact, not that he made a simple mistake, but that he was
> convicted of a serious offense, **that means he has no business
> being anywhere around a gun, much less having a gun in a
> chest in his bedroom.**[62]

---

[59] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting McKenzie, 157 Wn.2d at 52).

[60] Brief of Appellant at 24.

[61] Report of Proceedings (May 14, 2013) at 10-11 (emphasis added).

[62] Id. at 40 (emphasis added).

Dabalos's trial counsel did not object to either statement. Thus, Dabalos must meet the heightened standard to show prosecutorial misconduct. He fails to do so.

Assuming, without deciding, that these statements were improper, Dabalos fails to show that the statements were so flagrant or ill-intentioned that no curative instruction would have obviated any prejudicial effect on the jury and that the misconduct had a "substantial likelihood" of affecting the jury verdict.

After each of the statements identified by Dabalos, the prosecutor properly stated the law and elements in subsequent comments.

Not long after the first statement, the prosecutor stated that the State had the burden of proving that Dabalos "knowingly had a firearm in his possession or control."[63] Thus, a proper statement of the law and of the burden of proof quickly followed the first identified statement. Additionally, the prosecutor then continued on to discuss this element in detail when he summarized the evidence that proved that Dabalos knowingly had possession or control of the firearm. The extended discussion of this element also properly reflected the law.

Likewise, not long after the second statement, the prosecutor asked the jury to find that Dabalos "knowingly had in his possession or control a firearm."[64] Thus, a proper statement of the law quickly followed the second identified statement.

_____

[63] Id. at 12.

[64] Id. at 41.

17

Moreover, on more than one occasion, the prosecutor indicated to the jury that the instructions in the packet contained the correct statements of the law. And the prosecutor expressly stated that the written instructions are what "actually controls."

In sum, Dabalos fails to meet the heightened standard to show prosecutorial misconduct.

Dabalos compares this case to State v. Gotcher.[65] But in that case, the defense attorney objected to the prosecutor's misstatement and thus, the heightened standard did not apply.[66] In short, that case is distinguishable, and Dabalos's reliance on it is not persuasive.

Finally, Dabalos argues that a curative instruction would not have guaranteed that the prejudice caused by the prosecutor's error would be cured. But for the reasons already discussed, we disagree.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

Trickey, J.

Spearman, C.J.

---

[65] 52 Wn. App. 350, 759 P.2d 1216 (1988).

[66] Id. at 352.