**FILED**
**AUGUST 18, 2015**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 32730-2-III |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| A.L.-A.[1], (D.O.B. 6/11/99), | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — A.L.-A. appeals her juvenile court adjudication of guilt for first

degree assault. She contends the evidence was insufficient to prove beyond a reasonable

doubt that she intended to inflict great bodily harm or that the knife she used constituted a

deadly weapon. Viewing the evidence in the light most favorable to the State, we are

satisfied that the evidence was sufficient to prove the assault. We affirm.

FACTS

During the early afternoon of April 1, 2014, then 14-year-old A.L.-A. began to

argue with her older sister, Y.A.[2] Report of Proceedings (RP) at 16, 21. When Y.A.

---

[1] Under RAP 3.4, we change the title of the case to the juvenile's initials to protect the juvenile's interest in privacy.

[2] This court uses initials when referring to appellant's relatives to protect her privacy.

retreated to the bathroom to take a shower, A.L.-A. began banging on the door and demanding that Y.A. open the door. A.L-A. repeatedly demanded that her sister open the door and threatened to destroy her sister's possessions if she did not do so. Y.A. eventually opened the door and A.L.-A. went in and out of the bathroom.

Y.A. telephoned their mother, C.A., and told her she needed to come home and control A.L-A. When C.A. returned home, Y.A. informed her that A.L.-A. had been hitting her younger brother for no reason and had been leaving condoms on Y.A.'s bed. According to Y.A., this last comment incensed A.L.-A. and she started hitting Y.A. with her fist in the face and stomach. In retaliation, Y.A. told A.L.-A. that she was going to break A.L.-A.'s Xbox. This infuriated A.L.-A., who then threw a laptop and television that belonged to Y.A. In response, Y.A. grabbed A.L.-A.'s Xbox and threw it outside.

A.L.-A. then went into the kitchen with her mother, picked up a sharp steak knife and started swinging it back and forth with the blade pointed upward while yelling that she wanted to kill herself and Y.A. A.L.-A.'s mother called the police and Y.A. pushed A.L.-A. into the kitchen counter, fearing that she was going to hurt their mother. In response, A.L.-A. took a step toward Y.A. and swung at her with the knife, cutting Y.A.'s left arm in the process. A.L.-A. ran outside with the knife.

The State charged A.L.-A. with first degree assault, felony harassment, third degree malicious mischief, and second degree assault. At trial, Y.A. testified that the kitchen knife was "pretty sharp" and estimated that the total length was about seven inches. RP at 40. She also testified that she did not notice the cut on her arm until about ten to fifteen minutes after the incident and that she did not believe that A.L.-A. actually intended to kill her. A police officer testified that the cut on Y.A.'s arm was shallow and about two to three inches long. RP at 75; *see also* State's Exhibit 2.

When A.L.-A. testified, she stated that she had been angry because Y.A. had recently moved home with her boyfriend and taken A.L.-A.'s bedroom. She admitted that she and her sister had been arguing and that she pushed her sister. She also admitted that she cut Y.A., but claimed that she only used her fingernails. She also admitted that she put a knife to her throat and threatened to kill herself, but denied cutting Y.A. with the knife.

The juvenile court found A.L.-A. guilty of first degree assault and third degree malicious mischief. The court entered the following relevant findings of fact:

> 1.12) The Respondent was holding the knife in her right hand, blade forward and pointed upward, swinging the knife back and forth in a forward motion and at the same time yelling that she was going to kill [Y.A.]. When the Respondent was holding the knife, and threatening to kill [Y.A.], the two were close, only one to two feet apart. The Respondent was capable of carrying out the threat.

3

1.13)  While the record did not establish the length of the blade itself on the seven inch kitchen knife, the facts established that the physical attributes of the kitchen knife in combination with the way it was held, waived [sic] around, threatened to be used (both verbally and physically) and actually swung at . . . [was] capable of significant lacerations of the flesh of the victim, [Y.A.] which could have easily resulted in permanent scaring [sic] and disfigurement (for instance, had the knife slashed her face), *i.e.*, great bodily harm.  Thus, the knife was a deadly weapon under RCW 9A.04.110(6).

1.16)  The Respondent, close to [Y.A.], lifted the knife over her head and swung the knife at [Y.A.] inflicting a wound on [Y.A.]'s left arm approximately two to three inches long between her shoulder and her elbow, drawing blood. Responding Police Officer Matt Lee described the length of the cut as significant. Given the escalating tensions, the immediately preceding physical assault on [Y.A.], the Respondent's verbal threats to kill [Y.A.] in the kitchen coupled with her wielding the knife and contemporaneous actions evidencing a present willingness to use the knife to carry out the threat, the Court is persuaded beyond a reasonable doubt that Respondent did in fact intend to cause great bodily harm.  (It is not essential that "great bodily harm" actually occur.)

1.17)  The Respondent's actions were an intentional cutting of [Y.A.] with the knife and were in fact harmful to [Y.A.].  Thus, Respondent's actions constituted an intentional assault.

Clerks Papers (CP) at 54-56.

## ANALYSIS

A.L.-A. argues that insufficient evidence supports her adjudication for first degree assault because the State failed to prove beyond a reasonable doubt that she intended to inflict great bodily harm or that the knife constituted a deadly weapon.  We disagree.

When we review a sufficiency challenge to a conviction, we determine whether "after viewing the evidence most favorable to the [State], any rational trier of fact could have found the essential elements" of the crime "beyond a reasonable doubt." *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (emphasis omitted). "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." *State v. O'Neil*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007).

A.L.-A. first argues that the State failed to present evidence that she intended to inflict great bodily injury. She points out that she did not lunge at Y.A. or hold the knife in a manner that suggested she intended to hurt Y.A., rather she swung the knife in front of her in an outward motion from her own body and when the altercation ended, she ran out the back door.

As relevant here, under RCW 9A.36.011, first degree assault occurs when a person, "with intent to inflict great bodily harm . . . assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a). "Great bodily harm" is defined as "bodily injury which creates a probability of death or which causes a significant permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c). Intent is present when a person "acts with the objective

5

or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010.

"Evidence of intent . . . is to be gathered from all the circumstances of the case." *State v. Ferreira*, 69 Wn. App. 465, 468, 850 P.2d 541 (1993) (quoting *State v. Woo Won Choi*, 55 Wn. App. 895, 906, 781 P.2d 505 (1989)).

Here, the evidence shows that A.L.-A. was angry and out of control before she wielded the knife. As tensions between her and her sister escalated, A.L.-A. destroyed some of Y.A.'s personal property and hit her in the face and stomach with her fists. She then grabbed a knife from the kitchen and swung it back and forth while threatening to kill Y.A. After Y.A. pushed her, A.L.-A. thrust the knife forward, cutting Y.A.'s left arm. Viewing this evidence in the light most favorable to the State, the State presented sufficient evidence to support the court's finding that A.L.-A. intended to inflict great bodily harm on Y.A.

A.L-A. also argues that the State did not meet its burden of showing she was armed with a deadly weapon. Again, we disagree. Objects other than firearms and explosives qualify as deadly weapons if the State proves, under the circumstances of the case, that the object was "readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). In turn, "substantial bodily harm" means "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but

6

substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any body part." RCW 9A.04.110(4)(b).

A.L.-A. argues that the State failed to show that the knife *actually* caused substantial bodily harm because the minor cut at issue in the case does not qualify as substantial disfigurement. She points out that the cut was two- to three-inches long and that Y.A. did not even notice when it was inflicted. This argument misses the mark.

The nature of the actual injury inflicted is only one factor in determining whether the knife was capable of inflicting substantial bodily harm. *State v. Holmes*, 106 Wn. App. 775, 781-82, 24 P.3d 1118 (2001). Other factors include the intent and ability of the user, the degree of force, and the part of the body to which it was applied. *Holmes*, 106 Wn. App. at 782. Thus, the issue here is whether the knife, under the circumstances in which it was used, or threatened to be used, was readily capable of causing temporary but substantial disfigurement. *State v. Shilling*, 77 Wn. App. 269, 273, 492 P.2d 233 (1972) ("[r]eady capability is determined in relation to surrounding circumstances, with reference to potential substantial bodily harm."). In *State v. Barragan*, 102 Wn. App. 754, 761, 9 P.3d 942 (2000), for example, a pencil was deemed a deadly weapon where the evidence showed that the defendant forcefully swung the pencil's pointed end at the victim's eye and threatened to kill the victim. "[T]here must be some manifestation of willingness to

7

No. 32730-2-III
*State v. Ayala*

use the knife before it can be found to be a deadly weapon under RCW 9A.04.110(6)."
*State v. Gotcher*, 52 Wn. App. 350, 354, 759 P.2d 1216 (1988).

A.L.-A. manifested a ready willingness to use the knife to cause severe injury. She swung the knife in an upward motion in close proximity to her sister and cut her arm. While the resulting cut was not deep, the potential for impairment, as RCW 9A.04.110(6) requires, was great. Viewed in a light most favorable to the State, the State presented sufficient evidence that the knife was possessed in such circumstances that it was readily capable of causing substantial bodily harm and thus a deadly weapon. We therefore conclude that sufficient evidence supports the adjudication of guilt for first degree assault.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Brown, J.

Siddoway, C.J.

8