# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No.  53712-5-II |
| v. | |
| RAYMOND J. RUDY, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Raymond J. Rudy appeals his conviction for second degree assault with a deadly weapon of police Sergeant Donna Main.[1]  He argues that the evidence was insufficient to prove that the machete he was carrying qualified as a deadly weapon or that he had the specific intent to assault Main.  Because Rudy does not show that the evidence was insufficient to support the conviction for the second degree assault of Main, we affirm.

FACTS

On April 10, 2019, Rudy took various food items from a Safeway store and left the store without paying.  A store employee called 911.  While in the store parking lot, Rudy approached another customer, Zachary Mann, while wielding an unsheathed machete; Mann also called 911.

---

[1] Rudy was convicted of two counts of second degree assault with a deadly weapon, but he challenges only one of those convictions.

Sergeant Donna Main of the Port Orchard Police Department responded to the 911 calls. Despite Main ordering him to stop and to drop the weapon, Rudy also approached her while carrying the machete. Rudy eventually put the machete down and was arrested.

The State charged Rudy by amended information with second degree robbery and two counts of second degree assault with a deadly weapon based on his contacts with Mann and Main.[2] The case proceeded to a jury trial.

During the trial, Mann testified that he had stopped at the grocery store on his way home from work and had observed two people who appeared to be leaving the store. One of them was on his cellular phone, the other was Rudy.

Rudy turned and began yelling "generic threats" at Mann or the person on the phone. Verbatim Report of Proceedings (VRP) at 332. Mann noticed that Rudy was carrying either a machete or a "really long knife," because Rudy had "[w]aggled it at [him] or something like that when he was making threats." VRP at 333-34. Afraid that Rudy was seeking a fight, Mann returned to his car, retrieved his phone, and called 911.

Mann testified that he could not see Rudy when Main arrived. After Mann spoke briefly with Main, she drove down the parking lot to locate Rudy. Mann then observed Rudy emerge from "the recessed doorway" shortly after Main drove past the doorway. VRP at 336. Rudy headed back towards Mann with the unsheathed machete as Main turned onto the street. Rudy

---

[2] The State also sought deadly weapon sentencing enhancements and alleged that the second degree assault of Main was a crime against a law enforcement officer. The jury found by special verdict that Rudy had committed the assaults while armed with a deadly weapon and that the assault of Main was an assault of a law enforcement officer. Rudy does not raise any issues related to the special verdicts or any resulting sentencing enhancements.

was yelling at Mann, telling Mann that he was going to "eff [him] up" and "I will cut you", and "gesturing with" the machete as he approached. VRP at 338, 340. As Main pulled up near Mann and turned on her patrol car lights, Rudy was within "striking distance" of Mann. VRP at 337. Rudy then walked past Mann in Main's direction.

Main testified that she was on her way home from her shift when she responded to the 911 calls from the Safeway. When Main arrived at the store, she briefly spoke to Mann, who told her that Rudy had a machete and that he had headed south. Main drove south and eventually saw Rudy in her rear view mirror. Observing that Rudy was heading back towards Mann, she drove out of the parking lot and back towards Mann as fast as she could to intercept Rudy.

When Main stopped near Mann, she saw Rudy walking quickly towards the area and was afraid that Mann would be harmed. Main drew her gun and ordered Rudy to drop the unsheathed machete several times. When Rudy was about 10 to 15 feet from her, his focus turned from Mann to her. Rudy continued to walk towards her, and he did not obey her commands to drop the machete and to stop.

When Main retreated to find some cover, Rudy stopped and changed direction. Main followed Rudy and again told him to stop and to drop the weapon. Rudy suddenly dropped the weapon and complied when Main then instructed him to move away from the weapon. When he was five or six steps away from the machete, Main told Rudy to get onto the ground and he complied. Main held Rudy at gunpoint until more officers arrived and handcuffed him.

3

The jury found Rudy guilty of both second degree assault charges.[3] Rudy appeals his conviction for the second degree assault with a deadly weapon of Main.

## ANALYSIS

Rudy argues that the evidence was insufficient to support his conviction for the second degree assault of Main. He contends that the evidence was insufficient to establish that (1) the machete was a deadly weapon, or (2) he intended to create apprehension and fear of bodily injury in Main. We disagree.

### I. LEGAL PRINCIPLES

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. All inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. Direct and circumstantial evidence are equally reliable. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). And "[w]e defer to the fact finder on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007) (citing *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970, *abrogated in part on other grounds*, *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004)).

---

[3] The trial court granted the State's motion to dismiss the second degree robbery charge without prejudice.

## II. SUFFICIENT EVIDENCE OF DEADLY WEAPON

Rudy first argues that the evidence was insufficient to prove that the machete was a deadly weapon because there was no evidence that he "wielded the machete in such a manner towards Sgt. Main that it constituted a 'deadly weapon' for purposes of the second degree assault charge." Br. of Appellant at 12. We disagree.

The State charged Rudy with second degree assault with a deadly weapon. To prove this charge, the State had to prove that Rudy assaulted Main "with a deadly weapon." RCW 9A.36.021(1)(c). In this context, the term "deadly weapon" is defined as follows:

> "Deadly weapon" . . . shall include any other weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

RCW 9A.04.110(6). Because a knife is not a per se deadly weapon under this definition, "'there must be some manifestation of willingness to use the knife before it can be found to be a deadly weapon under RCW 9A.04.110(6).'" *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 366, 256 P.3d 277 (2011) (quoting *State v. Gotcher*, 52 Wn. App. 350, 354, 759 P.2d 1216 (1988)).

Rudy contends that the evidence is insufficient to show that the machete was a deadly weapon because there was no evidence establishing that he used, attempted to use, or threatened to use the machete in a way that was capable of causing death or substantial bodily harm when he encountered Main. Citing *Martinez*, Rudy asserts that the State had to show that there was "'some manifestation of willingness to use the knife before it can be found to be a deadly weapon.'" Br. of Appellant at 10, citing 171 Wn.2d at366. But, unlike in *Martinez*, there is such evidence here.

In *Martinez*, the defendant fled the crime scene; did not confront the officer who had ordered him to stop; and, although he had been carrying a sheathed knife at some point in time, he did not display or reach for the knife in question at any time. 171 Wn.2d at 358, 369. Here, in contrast, Rudy had removed the machete from its sheath, he was carrying the machete in open sight, he was threatening Mann, he was aggressively approaching Mann and Main while carrying the machete, and he refused to stop or drop the machete when Main ordered him to do so. Taking these facts in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Rudy was manifesting a willingness to use the machete and that he was threatening to use the machete to cause death or substantial bodily harm.

Accordingly, the evidence was sufficient to establish that the machete was a deadly weapon.

### III. SUFFICIENT EVIDENCE OF INTENT

Rudy next argues that the evidence was insufficient to prove that he had the specific intent to create apprehension and fear of bodily injury in Main. Again, we disagree.

The trial court instructed the jury that "[a]n assault is an act done with the intent to create in another apprehension and fear of bodily injury." CP at 54 (Jury Instruction 9). Accordingly, the State had to prove that Rudy acted with intent to create apprehension and fear of bodily injury in Main. When examining the sufficiency of the evidence, the "'specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability.'" *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004) (quoting *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)).

No. 53712-5-II

Here, the evidence established that Rudy threatened Mann with the machete and that when he turned his attention to Main, he approached her while carrying the unsheathed machete and he continued to approach her with the weapon in his hand even after she instructed him to stop and to drop the weapon. Taken in the light most favorable to the State, Rudy's act of continuing to approach Main while carrying a weapon and refusing to drop the weapon or stop when she told him to would allow a jury to infer intent to create apprehension or fear of bodily injury in Main as a matter of logical probability. Although Rudy did not make any express threats towards Main and may have had a "blank" look on his face, his actions could still be construed as an intentional attempt to cause apprehension or fear in Main. VRP at 381, 398. Accordingly, this sufficiency argument fails.

Because Rudy does not show that the evidence was insufficient to support the conviction for the second degree assault with a deadly weapon of Main, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, C.J.

WORSWICK, J.

7