# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50814-1-II |
| Respondent, | |
| v. | |
| MARY E. SANDOVAL, | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Mary Sandoval appeals her convictions for possession of stolen property in the second degree and possession of a controlled substance.[1] She argues that insufficient evidence supports the jury's finding that the credit card found in her possession was an "access device," and that the jury instruction defining "access device" misstated the law and constituted an improper comment on the evidence. Sandoval also argues that she received ineffective assistance of counsel when her attorney failed to request an "unwitting possession" jury instruction. Finally, Sandoval argues that we should remand for the trial court to inquire into her ability to pay legal financial obligations (LFOs).

We affirm the convictions but remand for the trial court to reconsider the imposition of LFOs.

---

[1] The jury also convicted Sandoval of possession of a stolen motor vehicle. She does not raise any issues relating to this conviction.

FACTS

I.    INCIDENT

On March 6, Sandoval entered into an agreement with a car dealership.  The agreement allowed Sandoval to take home and use a vehicle for three days to determine whether she wanted to purchase it.

After three days, the dealership lost contact with Sandoval and made unsuccessful attempts to retrieve the vehicle.  The dealership reported the vehicle stolen.

On April 2, the police found Sandoval and her husband in the stolen vehicle at the address listed in the agreement.  The police arrested Sandoval for possession of a stolen vehicle and searched her incident to that arrest.  In Sandoval's purse, the police found a credit card with somebody else's name on it, Sandoval's sister's birth certificate, and a pipe with methamphetamine residue.

The credit card had been stolen in early February.  At that time, the card was active and could have been used to buy goods.  Shortly thereafter, the card's owner cancelled the card.

The State charged Sandoval with possession of a stolen vehicle, possession of stolen property in the second degree, identity theft in the second degree, and possession of a controlled substance.

II.    TRIAL AND SENTENCING

As relevant here, the court instructed the jury on the elements of possession of stolen property in the second degree.  The court told the jury that the State had to prove beyond a reasonable doubt that the stolen property was an access device.

The court defined an access device as, "any card, plate, code, account number, or other means of account access that can be used alone or in conjunction with another access device to

obtain money, goods, services, or anything else of value." Clerk's Papers (CP) at 47. In the same instruction, the court stated, "The phrase 'can be used' refers to the status of the access device when it was last in possession of its lawful owner, regardless of its status at a later time." CP at 47.

The jury convicted Sandoval on all charges except identity theft in the second degree. The State dismissed that charge.

At sentencing, the court imposed numerous LFOs, including a $250 jury-demand fee. Sandoval appeals.

## ANALYSIS

### I.    ACCESS DEVICE DEFINED

Sandoval makes three assignments of error which are premised on her argument that the court incorrectly instructed the jury on the definition of the term "access device." According to Sandoval, an access device must be able to obtain something of value at the time it is found on a defendant, not at the time it was last in the possession of its lawful owner. Sandoval argues that insufficient evidence supports her conviction for possession of stolen property in the second degree, that the trial court erroneously instructed the jury on the definition of access device, and that the court impermissibly commented on the evidence with the instruction. We disagree with Sandoval.

#### A.    Legal Principles

RCW 9A.56.010(1) defines "access device." The definition contains the phrase "can be used." "Can be used" is not statutorily defined. Sandoval argues that the court's jury instruction contained an erroneous definition for the phrase "can be used." Sandoval's argument is two-fold. First, Sandoval argues that we should not follow *State v. Schloredt*, 97 Wn. App. 789, 987 P.2d

647 (1999),[2] which interpreted the phrase "can be used," because it is not supported by sound reasoning. Sandoval argues in the alternative that *State v. Rose*, 175 Wn.2d 10, 282 P.3d 1087 (2012), effectively overruled *Schloredt*. We disagree with both arguments.

We review questions of statutory interpretation de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). Our primary duty in interpreting statutes is to determine and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the statute's plain language and ordinary meaning is clear, we look only to the statute's language to determine intent. *Wentz*, 149 Wn.2d at 346. "[W]e discern plain meaning from 'all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *State v. Sanchez*, 177 Wn.2d 835, 843, 306 P.3d 935 (2013) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). We consider "'all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another.'" *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994) (quoting *State v. Huntzinger*, 92 Wn.2d 128, 133, 594 P.2d 917 (1979)). "[W]e presume the legislature does not intend absurd results and, where possible, interpret ambiguous language to avoid such absurdity." *State v. Ervin*, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010).

"[L]egislative inaction following a judicial decision interpreting a statute is often deemed to indicate legislative acquiescence in or acceptance of the decision." *State v. Stalker*, 152 Wn. App. 805, 813, 219 P.3d 722 (2009). "'[E]vidence of legislative acquiescence is not conclusive,

---

[2] Division I of this court decided *Schloredt*. We are not bound by the decisions of another division, but we do respectfully consider them. *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018).

but is merely one factor to consider.'" *Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 39, 384 P.3d 232 (2016) (quoting *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392, 687 P.2d 195 (1984)).

> RCW 9A.56.010(1) defines "access device" as

> any card, plate, code, account number, or other means of account access that *can be used* alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument.

(Emphasis added.)

In *Schloredt*, the court affirmed the defendant's convictions for possession of stolen property in the second degree based on his possession of four stolen credit cards. 97 Wn. App. at 790-91. Schloredt made the same argument that Sandoval makes. He argued that because the term "can be used" in RCW 9A.56.0101(1) is written in the present tense, the state must show that an access device can be used at the time the device is found on a defendant. *Schloredt*, 97 Wn. App. at 793. Thus, Schloredt argued that insufficient evidence supported his convictions because the state "failed to prove [that the cards] were 'operational' on the date [he] possessed them." *Schloredt*, 97 Wn. App. at 793. He argued that cancelled cards cannot be used to obtain something of value and therefore cancelled cards are not "access devices" under the statute. *Schloredt*, 97 Wn. App. at 793.

The court rejected the argument. It concluded that the language "can be used" referred "to the status of the access device when last in possession of its lawful owner." *Schloredt*, 97 Wn. App. at 794. The court looked to the legislative history and intent of RCW 9A.56.010(1), and reasoned that whether a victim cancelled his or her account prior to a defendant's arrest was irrelevant in determining whether stolen credit cards were "access devices" under the statute. *Schloredt*, 97 Wn. App. at 794. The court concluded that a contrary result would be an absurdity

and would contravene the legislature's intent to broadly construe the term "access device." *Schloredt*, 97 Wn. App. at 793-94. "It begs reason to assume the legislature intended that a defendant could not be charged with possessing a stolen credit card or other access device solely because the victim discovered the theft and cancelled the account on the stolen card before the defendant was apprehended." *Schloredt*, 97 Wn. App. at 794. We agree that Sandoval's interpretation leads to an absurd result.

Since *Schloredt* was decided in 1999, the legislature has amended RCW 9A.56.010 four times. LAWS OF 2017 ch. 266, § 7; LAWS OF 2011 ch. 164, § 2; LAWS OF 2006 ch. 277, § 4; LAWS OF 2002 ch. 97, § 1. Not once has the legislature amended the definition of "access device."

We conclude that *Schloredt* accurately interpreted the phrase "can be used" as that phrase is used in the definition of "access device." Moreover, we conclude that the legislature's inaction following *Schloredt* indicates its acquiescence in *Schloredt*'s interpretation of the phrase "can be used."

Sandoval next argues that *Rose* overruled *Schloredt*. In *Rose*, the victim testified that she received a credit card offer which included an unactivated credit card in her name. 175 Wn.2d at 13. The victim never activated the card and threw it away. 175 Wn.2d at 13. Because she never activated the card, no account was associated with it. *Rose*, 175 Wn.2d at 13-15. The card, later found in the defendant's possession, led to the state charging him with possession of stolen property in the second degree. *Rose*, 175 Wn.2d at 12.

The court concluded that because the "card was not linked to an existing, active account," and had not been signed, "[i]t stretche[d] the inference beyond the evidence to conclude that th[e] card could be used to obtain something of value." *Rose*, 175 Wn.2d at 17-18. The court also noted

6

that although the state may have been able to prove the card could have been used to obtain goods or services, it did not. *Rose*, 175 Wn.2d at 17.

In coming to its conclusion, *Rose* discussed *Schloredt* but did not conclude or even hint that the case had been wrongly decided. *Rose*, 175 Wn.2d at 16-17. Instead, *Rose* factually distinguished *Schloredt*. In *Rose*, the card was never activated, was never linked to an existing account, and required a $30 payment to activate. 175 Wn.2d at 13, 15. The court therefore recognized that, unlike in *Schloredt*, the card could not have been used to obtain something of value when it was last in the possession of its lawful owner. *Rose*, 175 Wn.2d at 17-18. In fact, because the state failed to prove that the card in *Rose* was ever able to be used to obtain something of value, there was no need for the court to examine the appropriate point in time for determining when something "can be used."

Sandoval further argues that *Rose* overruled *Schloredt* because *Rose* "held that if the access device in question is not tied to an existing, active account, the State must present affirmative evidence that the card can be used to obtain something of value." Reply Br. of Appellant at 2-3 (emphasis omitted). This language from *Rose*, however, does not advance Sandoval's argument because it was used to distinguish *State v. Clay*, 144 Wn. App. 894, 184 P.3d 674 (2008), not *Schloredt*. 175 Wn.2d at 18 n.1.

*Clay* involved an unactivated card linked to an already existing account. 144 Wn. App. at 899. In *Rose*, the court distinguished its facts recognizing that, unlike in *Clay*, the unactivated card was not linked to an existing account. 175 Wn.2d at 18 n.1. Here, the facts are more analogous to *Clay* because, as evidenced by the card owner's ability to purchase items using the credit card, the card was linked to an active account.

7

Based on the foregoing, we conclude that *Rose* did not overrule *Schloredt* and that *Schloredt* correctly interpreted the phrase "can be used" in RCW 9A.56.010(1).

B.      Sufficiency of the Evidence

Sandoval argues that insufficient evidence supports her conviction for possession of stolen property in the second degree because the State never proved she possessed an "access device." We disagree.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).

Sufficient evidence supports Sandoval's conviction. As discussed above, Sandoval possessed a stolen access device. A reasonable jury could have concluded, when viewing the evidence in the light most favorable to the State, that sufficient evidence supports Sandoval's conviction.

C.      Jury Instructions Misstated the Law

Sandoval argues that the trial court erroneously defined the terms "access device" and "can be used" when it instructed the jury. As discussed above, we disagree. The court did not err.

D.      Comment on the Evidence

Sandoval argues that the jury instruction defining "access device" and "can be used" constituted an impermissible comment on the evidence by the court because it resolved a factual issue in favor of the State and relieved the State of its burden to prove that Sandoval possessed an

"access device." Sandoval also argues that the jury instruction was an improper comment because its standard is derived from the facts of a previous sufficiency of the evidence case, *Schloredt*. We disagree with Sandoval.

We review jury instructions de novo to determine whether the trial court improperly commented on the evidence. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. "A jury instruction that does no more than accurately state the law pertaining to an issue . . . does not constitute an impermissible comment on the evidence." *State v. Woods*, 143 Wn.2d 561, 591, 23 P.3d 1046 (2001). However, a definitional jury instruction that "essentially resolve[s] a contested factual issue" is an improper comment on the evidence because it "effectively relieve[s] the prosecution of its burden of establishing an element of the [crime]." *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

Sandoval relies on *Brush*. In *Brush*, the jury had to decide if the defendant committed an aggravated domestic violence offense. 183 Wn.2d at 554. To make that determination, the jury had to decide if "the offense was part of an ongoing pattern of psychological abuse of the victim 'manifested by multiple incidents over a prolonged period of time.'" *Brush*, 183 Wn.2d at 555 (quoting RCW 9.94A.535(3)(h)(i)). Using a pattern jury instruction, the trial court instructed the jury that "'[t]he term prolonged period of time means more than a few weeks.'" *Brush*, 183 Wn.2d at 555 (internal quotation marks omitted); 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.17, at 719 (3d ed. 2008) (WPIC).

That instruction derived from *State v. Barnett*, 104 Wn. App. 191, 203, 16 P.3d 74 (2001), *abrogated on other grounds by State v. Epefanio*, 156 Wn. App. 378, 234 P.3d 253 (2010). *Brush*, 183 Wn.2d at 557. In *Barnett*, the court concluded that two weeks was not a "prolonged period of

time" as a matter of law; therefore, because the evidence at trial only showed two weeks of abuse, insufficient evidence supported the jury's finding that the defendant's crime was an aggravated domestic violence offense. 104 Wn. App. at 203; *see Brush*, 183 Wn.2d at 557.

In *Brush*, the court reversed and decided that the jury instruction was "an inaccurate interpretation of the holding of *Barnett* because it implies that any abuse that occurs for more than a few weeks is a 'prolonged period of time.'" 183 Wn.2d at 558, 561. The court stated "that two weeks was not legally sufficient to be a 'prolonged period of time'—not that abuse occurring longer than two weeks *would* be legally sufficient." Brush, 183 Wn.2d at 558.

In *Brush*, the jury instruction did not accurately state the law, which in turn meant that the trial court commented on the evidence. But here, the issue is different because, as discussed above, the court's jury instruction accurately stated the law. Furthermore, the trial court did not instruct the jury that the card was active at the time the lawful owner possessed it. Rather it merely stated the law and allowed the jury to determine whether the card was active at the relevant time.

We recognize that *Brush* also contained a sweeping admonition that "legal definitions should not be fashioned out of courts' findings regarding legal sufficiency." 183 Wn.2d at 558. Subsequent courts have recognized that the reason for this admonition is because appellate courts review the sufficiency of evidence for whether any rational jury could have found guilt beyond a reasonable doubt and construe facts in the light most favorable to the state, while juries must find guilt beyond a reasonable doubt. *State v. Sinrud*, 200 Wn. App. 643, 650, 403 P.3d 96 (2017). "Therefore, fashioning a jury instruction based on an appellate court's sufficiency holding effectively replaces the jury standard with the lesser appellate standard." *Sinrud*, 200 Wn. App. at 651.

Here, the jury instruction defining "can be used" was based on *Schloredt*. *See* WPIC 79.07, at 206 (4th ed. 2016). And although *Schloredt* resolved a sufficiency of the evidence challenge, we conclude that the policy implications regarding *Brush*'s admonition are not implicated by the jury instruction in this case.[3]

The language in *Brush* should not be read in isolation. After discussing why the instruction inaccurately interpreted *Barnett*, the court stated:

> Furthermore, the question faced by the court in *Barnett* was whether the specific facts in that case were legally sufficient for the court to uphold an exceptional sentence based on abuse occurring over a "prolonged period of time." This is not an appropriate basis on which to create a jury instruction defining "prolonged period of time." Thus, we clarify that legal definitions should not be fashioned out of courts' findings regarding legal sufficiency.

*Brush*, 183 Wn.2d at 558. Read in its entirety, it is clear that the court had concerns about defining highly fact-specific terms, such as "prolonged," based on previous sufficiency of the evidence rulings.

Whether abuse occurs over a prolonged period of time is a fact-specific and subjective determination. One jury's finding, based on its facts, should not control or dictate the outcome of later cases, based on their facts.

Thus, *Brush* recognizes that courts should not fashion jury instructions based on previous sufficiency of the evidence cases to define certain terms, e.g., prolonged, which should be left to the sound discretion of the jury. Doing otherwise could constrain later juries in making findings. It also could relieve the State of having to prove guilt beyond a reasonable doubt in subsequent cases.

---

[3] We note that the admonition in *Brush* was dicta.

11

In contrast, determining the point in time for a jury to calculate whether an instrument "can be used" is not a fact-specific inquiry. Defining the phrase does not constrain juries in subsequent cases. Unlike a definition of the word "prolonged," the proper definition of the phrase "can be used" is independent of the facts of any given case.

This conclusion is further supported by *Schloredt*'s analysis. *Schloredt* engaged in statutory interpretation to define the phrase "can be used." *See* 97 Wn. App. at 793-94. The court did not construe facts in the state's favor or determine whether any reasonable jury could find that "can be used" is susceptible to the interpretation that the relevant time is the time in which the instrument was last in possession of its lawful owner. Instead, only *after* the court reached its legal conclusion for the appropriate definition of "can be used" did it look to the evidence presented to determine whether sufficient evidence supported the finding that the instrument was an "access device." *Schloredt*, 97 Wn. App. at 794.

Accordingly, the policies behind *Brush*'s admonition are not implicated by the court's instructions in this case. Based on the above, we conclude that the court did not improperly comment on the evidence.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Sandoval argues that she received ineffective assistance of counsel when her attorney failed to request a jury instruction for unwitting possession as an affirmative defense for her possession of a controlled substance charge. We disagree.

### A. Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v.*

*Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

Unwitting possession is an affirmative defense to the charge of unlawful possession of a controlled substance. *State v. Higgs*, 177 Wn. App. 414, 437, 311 P.3d 1266 (2013). To prove unwitting possession, a defendant must show by a preponderance of the evidence that she did not know that the substance was in her possession or did not know the nature of the substance. *State v. Olinger*, 130 Wn. App. 22, 26, 121 P.3d 724 (2005).

B.      Prejudice

Sandoval argues that she was prejudiced because, without the unwitting possession instruction, "the jury could give no weight to [her] testimony concerning how she inadvertently possessed the methamphetamine." Br. of Appellant at 32. Sandoval argues that without the instruction, the jury was given no choice but to convict her, and therefore, she was denied a fair trial. We disagree.

In an ineffective assistance of counsel claim, prejudice exists if there is a reasonable probability that, except for counsel's errors, the results of the proceedings would have differed. *Grier*, 171 Wn.2d at 34. A reasonable probability is a probability sufficient to undermine

confidence in the outcome after considering the totality of evidence before the jury. *Strickland*, 466 U.S. at 694-95. Such probability is lacking here.

Viewing the evidence, jury instructions, and verdicts leads to the conclusion that the jury disbelieved Sandoval's testimony. For instance, Sandoval testified that she was not aware that another person's credit card was in her purse until after she was arrested. However, in convicting Sandoval of possession of stolen property in the second degree, the jury necessarily found to the contrary. The jury found beyond a reasonable doubt that Sandoval knowingly possessed the credit card.

Furthermore, Sandoval testified that she obtained the credit card and methamphetamine pipe at the same time, and both items were found on Sandoval in the same location. Therefore, if the jury found that the State carried its burden in showing beyond a reasonable doubt that Sandoval *knowingly* possessed the credit card, then it is doubtful that Sandoval could have carried her burden to show, by a preponderance of the evidence, that she *unwittingly* possessed the methamphetamine pipe.

Thus, we conclude that it was not reasonably probable that the jury would have found Sandoval not guilty of possession of a controlled substance if they had been instructed on the unwitting possession defense. Sandoval was not prejudiced by her counsel's failure to request the instruction. Because Sandoval has not met her burden to prove prejudice, her ineffective assistance of counsel claim fails.

III.    LFOs

Sandoval argues, and the State agrees, that the sentencing court did not adequately inquire into her ability to pay LFOs and erred when it imposed a discretionary jury-demand LFO. We accept the State's concession.

14

We remand for the court to reconsider the imposition of LFOs. On remand, the trial court should consider all of the LFOs in light of the 2018 amendments to the LFO provisions, LAWS OF 2018, ch. 269, and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

CONCLUSION

We affirm the defendant's convictions but remand for the court to reconsider the imposition LFOs.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.