IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78750-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| MICHAEL CRAIG OKLER, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: March 9, 2020 |

SMITH, J. — Michael Okler appeals his conviction for possession of a controlled substance. He contends that evidence of methamphetamine found in his sock should have been suppressed because it was the fruit of an unlawful seizure. He further contends that the statute under which he was convicted was unconstitutional and that his trial counsel was ineffective for failing to request an unwitting possession instruction. Finally, Okler argues that the trial court erred by ordering him to pay Department of Corrections (DOC) supervision fees and interest on legal financial obligations.

We affirm but remand to the trial court to strike the DOC supervision fees and interest on legal financial obligations.

FACTS

On August 6, 2017, Marysville Police Sergeant Matthew Goolsby and Officers Joseph Belleme and Belinda Paxton responded to a 911 call regarding suspected drug activity in a recreational vehicle (RV) parked on a public street. Upon arrival, Sergeant Goolsby parked several blocks away from the RV, but

Officer Belleme parked 20 or 30 feet away from the RV. The officers did not activate their vehicles' lights or sirens. Officer Belleme approached the front of the RV and attempted to have a conversation with a woman seated in the driver's seat in a conversation. After having difficulty hearing one another, the woman voluntarily exited the vehicle, and Officer Belleme learned that there were other individuals in the RV. Officer Belleme then stated, "'This is Marysville Police, is there anybody else in the vehicle? We'd like to talk to you. Can you come out and talk to us?'" Officer Belleme later testified that he did not use an "aggressive tone."

Okler exited the RV. At some point thereafter, Officer Belleme made another announcement to the people in the RV, and two more individuals came out. Officer Belleme "motioned and asked if [Okler] would come up to the front of the vehicle where [Officer Belleme] was at, and . . . asked [Okler] what his name was." Okler provided his name and date of birth, and while dispatch "ran a check on [Okler's] name," Officer Belleme and Okler "had casual conversation." Officer Belleme advised Okler of the purpose of the officers' visit, namely a report of drug activity. After about one minute, the results from dispatch came through, and Officer Belleme learned that there was an outstanding warrant for Okler's arrest. At this point, Officer Belleme "told [Okler] to sit down and that he was not free to leave." Once the warrant was confirmed, Officer Belleme handcuffed and formally arrested Okler. He failed to advise Okler of his Miranda rights. "During [the] search incident to arrest, Officer Belleme asked [Okler] if he had anything illegal that would affect his admissibility into the jail." Okler responded that he

2

sold methamphetamine and "indicated he had two grams of methamphetamine in his left sock." Officer Belleme located the methamphetamine in Okler's sock.

The State charged Okler with possession of a controlled substance, methamphetamine, under RCW 69.50.4013 (the possession statute). Prior to trial, Okler moved to suppress the drug evidence obtained during his arrest, arguing that Okler was unlawfully seized when Officer Belleme "ordered" him out of the RV. Meanwhile, the State moved to admit Okler's pre- and postarrest statements to Officer Belleme. Following a CrR 3.5 and CrR 3.6 hearing, the trial court concluded that Okler voluntarily exited the RV, that the officers did not compel him to do so, and that he was not unlawfully seized. The court thus denied Okler's motion to suppress the drug evidence found in his sock. The court also concluded that because Okler was not in custody until Officer Belleme told him to sit on the curb, any statements that Okler made up to that point were admissible. However, the court concluded that because Okler was not given Miranda warnings after he was told to sit on the curb, his subsequent statements that he had methamphetamine in his sock and that he sold methamphetamine were inadmissible except for impeachment purposes.

At trial, Okler testified that he remembered "[v]ery little" of the morning of his arrest because he "had just gotten out of the hospital from a drug overdose." He testified that one of the women in the RV "grabbed [his] feet and pulled them up towards her and said, why don't you just put your feet up and relax." He testified that he did not recall having anything, much less a controlled substance, in his sock. Okler testified that he did not remember telling Officer Belleme that

3

he had "anything on [his] person" or that he sold drugs.

The court gave a standard jury instruction, consistent with 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 50.03 (4th ed. 2016), for possession of a controlled substance, and Okler's counsel did not request an unwitting possession instruction. The jury convicted Okler as charged. At sentencing, the court ordered Okler to pay a $500 victim penalty assessment, interest thereon, and DOC supervision fees. Okler appeals.

ANALYSIS

Admission of Drug Evidence

Okler contends that because he was unlawfully seized when he exited the RV in response to Officer Belleme's announcement, the trial court erred by not suppressing the fruits of that seizure, i.e., the evidence of the methamphetamine found in his sock. We disagree.

> Under article I, section 7, a person is seized "only when, by means of physical force or a show of authority," [their] freedom of movement is restrained and a reasonable person would not have believed [they are] (1) free to leave, given all the circumstances, or (2) free to otherwise decline an officer's request and terminate the encounter.

State v. O'Neill, 148 Wn.2d 564, 574, 62 P.3d 489 (2003) (citation omitted) (internal quotation marks omitted) (quoting State v. Young, 135 Wn.2d 498, 510, 957 P.2d 681 (1998)). Facts indicative of a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"

Young, 135 Wn.2d at 512 (quoting United States v. Mendenhall, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

Article I, section 7 permits social contacts between police and citizens. Young, 135 Wn.2d at 511. And "'[a] police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter to an investigative detention.'" Young, 135 Wn.2d at 511 (quoting State v. Armenta, 134 Wn.2d 1, 11, 948 P.2d 1280 (1997)). Where, as here, the determinative facts are not in dispute,[1] "'the ultimate determination of whether those facts constitute a seizure is one of law,'" which we review de novo. State v. Harrington, 167 Wn.2d 656, 662, 222 P.3d 92 (2009) (quoting Armenta, 134 Wn.2d at 9). Okler has the burden of proving that a seizure in violation of his constitutional rights occurred. O'Neill, 148 Wn.2d at 574.

Here, Okler has not met his burden. Specifically, Okler was a passenger in a parked vehicle located in a public space and could be stopped by police for a social contact. See State v. Mote, 129 Wn. App. 276, 280, 292, 120 P.3d 596 (2005) (holding that where the defendant was a passenger in vehicle parked in a public place, he was not seized merely because an officer approached and asked for his name and birth date). To that end, when the officers approached the RV, they did not activate their emergency lights or sirens, nor did they block the RV's exit with their patrol cars. And while Okler exited the vehicle following Officer Belleme's first announcement, others remained in the RV, thus

---

[1] Okler assigns error to the trial court's findings that the officers knocked before requesting that the occupants exit the RV. We accept the State's concession that those findings were not supported by substantial evidence but note that they are not material to our analysis.

suggesting that a reasonable person would have felt free to decline Officer Belleme's request. See State v. Smith, 154 Wn. App. 695, 699-700, 226 P.3d 195 (2010) (concluding that the defendant was not seized when he exited a motel room because "the officers did not instruct Smith to remain in the area outside the room" and the other occupant "remain[ed] in the room, strongly suggesting that the officers did not require Smith to leave"). Moreover, the language used by Officer Belleme suggested compliance was a choice, i.e., "We'd like to talk to you. Can you come out and talk to us?" Finally, Officer Belleme never touched Okler and did not prevent him from leaving until he told him to sit on the curb. In short, the cumulative facts surrounding the initial interaction between Okler and the officers support a determination that it was a social contact, not a seizure.

Okler disagrees and relies on State v. Carriero[2] for the proposition that, among other things, "[t]he flanking or impediment of a vehicle by police is a factor that tends [to] show that the person inside the vehicle was seized." In Carriero, two officers parked behind the defendant's vehicle in a narrow alley which "blocked Carriero's egress." 8 Wn. App. 2d at 647. The officers, standing immediately next to the vehicle's doors and "with guns in holsters," asked the occupants of the vehicle whether "either possessed identification." Carriero, 8 Wn. App. 2d at 648, 659. Division Three concluded that Carriero was seized and

---

[2] 8 Wn. App. 2d 641, 439 P.3d 679 (2019); see also State v. Johnson, 8 Wn. App. 2d 728, 744, 440 P.3d 1032 (2019) (holding that a seizure existed where "two uniformed officers" approached the defendant's vehicle, shining flashlights therein, and repeatedly questioning the driver "as to whether the vehicle belonged to" another person).

6

held that the fruits of the unlawful possession must be suppressed. Carriero, 8 Wn. App. 2d at 666. Unlike Carriero, the officers here did not prevent the exit of any of the RV's occupants, and no facts in the record establish that the officers' vehicles prohibited the RV's egress. Thus, Okler's reliance on Carriero is misplaced.

Okler further contends that he was seized when Officer Belleme motioned him to the front of the RV and told him there was an allegation of drug activity. But Officer Belleme did not show authority to prohibit Okler from leaving and did not tell him he could not leave, and the fact that he motioned for Okler to come to the front of the RV without commanding him to do so does not require reversal. See, e.g., United States v. Orman, 486 F.3d 1170, 1172, 1175 (9th Cir. 2007) (concluding that the defendant was not seized when, among other things, the officer "motioned [him] away from the foot traffic"). Thus, Okler's contention fails.

### To-convict Instruction

Okler contends that the to-convict instruction for the possession of a controlled substance must include an element that the defendant knowingly possessed the substance or it is unconstitutional. We disagree.

Okler was convicted of violating RCW 69.50.4013, which criminalizes the possession of a controlled substance. In State v. Bradshaw, our Supreme Court upheld the constitutionality of the predecessor to RCW 69.50.4013 and reaffirmed its earlier holding that the statute does not have a mens rea element.

7

152 Wn.2d 528, 530, 98 P.3d 1190 (2004).[3] Like the defendants in Bradshaw, Okler challenges the to-convict instruction's lack of a mens rea element. But Bradshaw explicitly rejects the constitutional challenge Okler presents. And since Bradshaw, the legislature has amended the possession statute numerous times[4] and has not added a mens rea element to the mere possession statute. See Bradshaw, 152 Wn.2d at 535 ("'The Legislature's failure to amend [a criminal statute] in light of [an appellate opinion omitting an intent requirement] suggests a legislative intent to omit an intent requirement.'" (alterations in original) (quoting State v. Edwards, 84 Wn. App. 5, 12-13, 924 P.2d 397 (1996))). Therefore, the challenged to-convict instruction for the possession statute was proper and did not violate Okler's constitutional rights.

## Ineffective Assistance of Counsel

Okler contends that his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel failed to ask for an unwitting possession instruction. We disagree.

"Where the claim of ineffective assistance is based on counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." State v. Classen, 4 Wn. App. 2d 520, 539-40, 422 P.3d 489 (2018). Counsel's conduct is presumed

---

[3] RCW 69.50.401, the statute at issue in Bradshaw, was amended in 2003 to move certain subsections into separate statutes, including RCW 69.50.4013. See LAWS OF 2003, ch. 53 § 331.

[4] See LAWS OF 2013, ch. 3 § 20; LAWS OF 2015, ch. 70 § 14, ch. 4 § 503; LAWS OF 2017, ch. 317 § 15.

8

effective and is not deficient if it "can be characterized as legitimate trial strategy or tactics." State v. Kyllo, 166 Wn.2d 856, 862-63, 215 P.3d 177 (2009). To rebut the presumption, Okler must show "there is no conceivable legitimate tactic explaining counsel's performance." State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Unwitting possession is an affirmative defense to possession of a controlled substance. Bradshaw, 152 Wn.2d at 538. "To prove unwitting possession, a defendant must show by a preponderance of the evidence that she did not know that the substance was in her possession or did not know the nature of the substance." State v. Sandoval, 8 Wn. App. 2d 267, 281, 438 P.3d 165, review denied, 193 Wn.2d 1028 (2019). And "[a] defendant is not entitled to an instruction that inaccurately states the law or for which there is no evidentiary support." State v. Phillips, 9 Wn. App. 2d 368, 383, 444 P.3d 51, 59 (citing State v. Crittenden, 146 Wn. App. 361, 369, 189 P.3d 849 (2008)), review denied, 194 Wn.2d 1007 (2019).

Here, Okler testified that he had left the hospital earlier that morning, arriving at the RV shortly before the police. He admitted to using methamphetamine, cocaine, and heroin but said that he did not "really remember" what happened that morning and could not "recollect" having anything in his sock. He also testified that one woman told him, "[W]hy don't you just put your feet up and relax." This testimony is insufficient to support an unwittingly possession instruction. See State v. Powell, 150 Wn. App. 139, 154, 206 P.3d 703 (2009) ("A defendant is entitled to a jury instruction supporting his

9

theory of the case if there is substantial evidence in the record supporting his theory."). And, in order to request an unwitting possession instruction, Okler's trial counsel would have had to elicit testimony from Okler that he did not know that he possessed methamphetamine. But had he elicited this testimony, the State could have—and no doubt would have—impeached Okler's testimony with his statement to Officer Belleme that he had methamphetamine in his sock. Therefore, Okler's trial counsel had a tactical reason not to elicit testimony in support of an unwitting possession instruction, and thus, his counsel was not ineffective. See State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002) (holding that a legitimate trial strategy cannot serve as a basis for an ineffective assistance of counsel claim).

Okler contends that his trial counsel's decision could not have been tactical because there was no defense available to Okler other than unwitting possession. However, as discussed above, Okler would not have been entitled to the instruction because the record lacked adequate evidence to support it. Therefore, Okler's contention is unpersuasive. See State v. Flora, 160 Wn. App. 549, 556, 249 P.3d 188 (2011) ("[I]f the defendant would not have received a proposed instruction, counsel's performance was not deficient.").

### Nonrestitution Interest Accrual and DOC Supervision Fees

Okler contends that because he is indigent, we must remand to strike the interest accrual provision of his judgment and sentence and the imposition of DOC supervision fees. The State concedes that remand is appropriate to strike the interest accrual provision, and we accept the State's concession.

10

As for the DOC supervision fees, RCW 9.94A.703(2)(d) provides that "*[u]nless waived by the court,* as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [DOC]." (Emphasis added.) Because supervision fees can be waived by the court, they constitute discretionary LFOs. See RCW 9.94A.030(31) ("'Legal financial obligation' means a sum of money that is ordered by a superior court of the state of Washington for legal financial obligations which may include . . . any . . . financial obligation that is assessed to the offender as a result of a felony conviction."). To this end, a trial court's decision whether to impose a discretionary LFO is reviewed for abuse of discretion. State v. Ramirez, 191 Wn.2d 732, 741, 426 P.3d 714 (2018).

Here, the record reflects that the trial court intended to waive all discretionary LFOs. Specifically, the court stated, "I'll impose the $500 victim penalty assessment. I'll find you're indigent, waive the other financial obligations." Because the record indicates that the trial court intended to waive all discretionary LFOs but the court did not waive DOC supervision fees, we remand to the trial court to strike the DOC supervision fees. See State v. Dillon, No. 78592-3-I, slip op. at (Wash. Ct. App. Feb. 3, 2020), https://www.courts.wa.gov/opinions/pdf/785923.pdf (remanding to trial court to strike DOC supervision fees where the record reflected the trial court's intent to waive all discretionary LFOs).

11

We affirm but remand to the trial court to strike the DOC supervision fees and interest accrual.

Smith, J.

WE CONCUR:

Leach, J.

## State v. Michael Craig Okler
## No. 78750-1-I

DWYER, J. (concurring) — I have said it before and I will say it again:

> In a constitutional sense, the term "social contact" is meaningless. The term has been adopted by lawyers and judges to describe circumstances that do not amount to a seizure. But it never matters whether an encounter can be called a social contact. In seizure analysis, what matters is whether a person is seized. If not, the inquiry ends regardless of whether the encounter can be said to have been a social contact. If so, the requirements for a lawful seizure apply—again without concern for the claimed "social" purpose for the "contact."

State v. Johnson, 8 Wn. App. 2d 728, 735, 440 P.3d 1032 (2019).

Accordingly, I do not join the majority's efforts to characterize the encounter between Mr. Okler and the officers as a "social contact." Such an analysis is entirely unnecessary.

In all other respects, I join in the majority opinion.